IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANTO ACCURSO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 10 C 0968 |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security | ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Santo Accurso's (Accurso) motion for summary judgment, and Defendant's motion for summary judgment. For the reasons stated below, we deny Defendant's motion for summary judgment, grant Accurso's motion for summary judgment, and remand the instant action for further proceedings consistent with this opinion.

**BACKGROUND**

Accurso states that he is forty-four years old and that he worked in the construction industry for more than twenty-three years before he became unable to work on February 1, 2006. Accurso indicates that he suffers from arthritis in his knee, torn ankle ligaments, diabetes mellitus, kidney problems, and swelling in his

1

feet and left hand.  Accurso also indicates that he is 5'9" tall and weighs more than 400 lbs.  Accurso contends that his medical conditions, including his morbid obesity, have caused him to have knee and leg pain, difficulty walking short distances or climbing stairs, sleep apnea, and the inability to close his left hand.

On January 10, 2008, Accurso applied for Disability Insurance Benefits (DIB) with the Social Security Administration (SSA) alleging that he became unable to work beginning on February 1, 2006, due to bad knees, torn ankle ligaments, diabetes, a kidney mass, sleep apnea, an inguinal hernia, and arthritis.  (AR 52).  Accurso's application was initially denied on March 27, 2008, and was denied again on reconsideration on July 8, 2008.  At Accurso's request, an administrative hearing was held on September 17, 2009.  On October 15, 2009, the Administrative Law Judge (ALJ) issued a partially favorable decision on Accurso's claim, finding that Accurso was "disabled" beginning May 1, 2009, but that Accurso was "not disabled" from February 1, 2006 through April 30, 2009, based on Accurso's "vocational factors and residual functioning capacity for the full range of sedentary work" during that time period.  (AR 46).  Accurso requested that the Appeals Council review the ALJ's denial of DIB from February 1, 2006 through April 30, 2009.  On December 9, 2009, the Appeals Council denied Accurso's request for review.  Accurso initiated the instant civil action for judicial review of the ALJ's partial denial of DIB pursuant to 42 U.S.C. § 405(g).  Accurso and Defendant have each filed a motion for summary judgment.

## LEGAL STANDARD

An individual that has been denied benefits by the Social Security Commission may seek review of the denial in a district court "after any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The district court must review the evidence before the ALJ, "'considering both the evidence that supports, as well as the evidence that detracts from, the . . .decision,'" and should "uphold a decision so long as the evidence supports it and the ALJ explains h[is] analysis of that evidence with 'enough detail and clarity to permit meaningful appellate review.'" *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008)(quoting in part *Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005)). The district court's sole role is to determine "'whether the final decision of the [Commissioner] is both supported by substantial evidence and based on the proper legal criteria.'" *Id.*; *see also Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010)(stating that the Commissioner's decision will be upheld, if the correct legal standard is applied and the decision "is supported by substantial evidence"); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003)(stating that "'[e]vidence is substantial if it is sufficient for a reasonable person to accept as adequate to support the decision'"); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)(stating that the court cannot "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations" and that "even if 'reasonable minds could differ concerning whether [the plaintiff] is disabled,'" the court "must nevertheless affirm the ALJ's decision denying her

claims if the decision is adequately supported")(quoting in part *Schmidt v. Astrue*, 496 F.3d 833, 841 (7th Cir. 2007)).

## DISCUSSION

In reviewing a disability application, an ALJ follows a five-step process. At step one, the ALJ evaluates "the applicant's present work activity." *Arnold v. Barnhart*, 473 F.3d 816, 820-21 (7th Cir. 2007). At step two, the ALJ is required to "weigh[] the severity of the applicant's impairment." *Id.* (stating that "[t]he impairment or combination of impairments must significantly restrict an applicant's physical or mental ability to perform basic work activities or an ALJ should enter a finding of not disabled"). At step three, the ALJ must determine "whether the impairment or combination of impairments meets or equals an impairment" in a listing of disabling impairments (Listing). *Id.* If the claimant meets the requirements in "steps one, two, and three, she will automatically be found disabled." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). However, if a claimant meets the requirements of steps one and two, but not three, the ALJ must proceed to step four and possibly step five. *Id.*

At the fourth step, "the ALJ determines whether the" residual functional capacity (RFC) "prevents the applicant from performing his or her past relevant work." *Arnold*, 473 F.3d at 820. At the fifth step, the "ALJ uses the assessment of RFC to determine if the applicant can make an adjustment to other work based on the applicant's age, education, and work experience." *Id.* (stating that "[i]n the last step,

4

the burden is on the Commissioner to demonstrate that the applicant is capable of performing other work 'in the national economy'")(quoting in part *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999)).

Accurso argues that the ALJ erred by (1) failing to consider Accurso's obesity at step three, when he found that Accurso did not meet the requirements of any listed impairment, (2) failing to consider Accurso's obesity as an aggravating factor at step five, when assessing Accurso's limitations, (3) failing to adequately consider the objective medical evidence when finding Accurso's testimony relating to the time period before May 1, 2009 not credible, (4) failing to adequately consider the objective medical evidence in making his RFC assessment, and (5) failing to follow Social Security Ruling (SSR) 83-20 when determining the onset date of Accurso's disability.

In the instant action, the ALJ concluded that Accurso was "not disabled" from February 1, 2006 through April 30, 2009. Specifically, the ALJ found that Accurso did not satisfy step three because Accurso's impairments did not meet or equal a listed impairment, and that, from February 1, 2006 through April 30, 2009, Accurso did not satisfy step five because, based on Accurso's age, education, work experience, and RFC, there were a significant number of jobs that Accurso could have performed during that time period. (AR 46).

I. Consideration of Obesity at Step Three

Accurso argues that the ALJ erred in finding that Accurso did not meet or

equal a listed impairment without considering the effect of Accurso's obesity. At the third step of the disability evaluation process, "evidence demonstrating the claimant's impairments is compared to a list of impairments presumed severe enough to preclude any gainful work." *Rice v. Barnhart*, 384 F.3d 363, 365 (7th Cir. 2004); 20 C.F.R. § 404.1520(a)(4)(iii). A claimant's impairment is deemed to meet a listing only if the impairment meets "all of the criteria for a listed impairment" or the claimant "'present[s] medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002)(quoting in part *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990))(emphasis in original). Accurso contends that the ALJ failed to address all of the evidence of Accurso's impairments and to properly assess whether, based on Accurso's obesity, Accurso's impairments met or equaled Listing 1.02 (Listing 1.02). (P SJ Memo 5).

Listing 1.02, entitled "Major dysfunction of a joint(s) (due to any cause)," applies to musculoskeletal impairments

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s).

20 C.F.R. Pt. 404, Subpt. P, App.1 §1.02. Further, to meet the criteria for Listing 1.02, the impairment(s) must involve, at least

> one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or . . . one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as

6

    defined in 1.00B2c.

*Id.* The term "inability to ambulate effectively" is defined as an "extreme limitation on the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. Pt. 404, Subpt. P, App.1 §1.00(B)(2)(b)(1).

Pursuant to SSR 02-1p, obesity should be considered at step three when assessing whether a claimant's "impairment(s) meets or equals the requirements of a listed impairment. . . . " SSR 02-1p. At step three, an ALJ should "find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing." *Id*. Further, obesity can, by itself or in combination with other impairments, create the equivalent of a listing if the impairment "is equivalent in severity to a listed impairment." *Id*.; *see also Sienkiewicz v. Barnhart*, 409 F.3d 798, 802 (7th Cir. 2005)(indicating that "obesity may increase the severity of [the claimant's] musculoskeletal and pulmonary disorders"). Thus, if a claimant's obesity "is of such a level that it results in an inability to ambulate effectively . . . it may substitute for the major dysfunction of a peripheral weight-bearing joint in listings 1.02A or 101.02A . . . ." SSR 02-1p.

Accurso testified that his last employment ended in early 2004 because he was having problems with his knees. (AR 42). Accurso also testified that pain in his knee limited his ability to climb stairs and his walking to less than a block. (AR 42). Accurso indicated that he was unable to stoop, was limited in bending, and

that, when financially able, he took three to four Vicodin per day to address his knee pain. (AR 42). In addition, the record shows that on May 11, 2006, Accurso was seen by an orthopaedic surgeon named Dr. Hayek, who indicated that Accurso was morbidly obese, that Accurso's knee symptoms had worsened over the prior two years since Accurso had undergone arthroscopic surgery on his knee, that Accurso's x-rays revealed "mild joint narrowing," and that Accurso had "early medial compartment arthritis." (AR 202-203). The record also reflects that, on May 24, 2006, Dr. Geller at Gottlieb Memorial Hospital observed that Accurso was morbidly obese. (AR 212). Further, the record indicates that, on September 29, 2006, Dr. Calabrese of PrimeCare Family Physicians Limited documented Accurso's morbid obesity and "persistent bilateral knee pain," which steroid injections did not alleviate. (AR 200).

In connection with Accurso's claim for DIB, Dr. Weiss examined Accurso on March 10, 2008. Dr. Weiss indicated that Accurso complained of having knee pain for the past ten years, including after undergoing arthroscopic surgery in 2004. In addition, Dr. Weiss stated that Accurso complained about having shaky knees after walking a block, frequently being short of breath, and experiencing pain after climbing only a few stairs. (AR 256). Dr. Weiss also observed that Accurso was morbidly obese, that Accurso appeared short of breath after getting on and off the examination table and walking approximately ten feet, and that Accurso appeared to become short of breath when sitting up from a supine position. (AR 258). Dr.

Weiss also described "decreased range of motion in the knees," with flexion being 80 degrees, and crepitation in both knees. (AR 259).

In finding that Accurso's impairments did not meet or equal a listed impairment, the ALJ did not address such key points of medical evidence. While an ALJ is entitled to rely on Disability Determination and Transmittal forms as expert opinions indicating that a claimant does not meet a listing, where there is "substantial evidence to contradict the agency's position on the issue of medical equivalency," an ALJ must "specifically articulate his reasons for accepting the consulting physicians' opinions on the question of medical equivalency." *Scheck v. Barnhart*, 357 F.3d 697, 700-01 (7th Cir. 2004). Dr. Vidya Madala and Dr. Arjmand, both non-examining physicians, submitted such forms on March 27, 2008, and July 8, 2008, respectively. (AR 34, 35). However, since there is substantial evidence to contradict the finding that Accurso's impairment did not meet or equal a listed impairment, the ALJ should have offered more than a conclusory statement with regard to the issue.

The ALJ failed to specify why Accurso's impairments failed to meet the Listing 1.02. Nor did the ALJ explain why Accurso's obesity would not warrant a conclusion that he met the requirements for any such listings. The ALJ's analysis at step three as to the listings consists of one conclusory statement, which reads "I have evaluated the claimant's impairments in the context of the Listings and conclude that they do[] not manifest clinical signs and findings that meet the specific criteria of any of the Listings." (AR 43). While an ALJ is not required to "address every piece of evidence in his decision," *Sims*, 309 F.3d at 429, an ALJ in rendering his decision

9

must "'build an accurate and logical bridge from the evidence to the conclusion.'" *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008)(quoting *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000)). The ALJ cannot satisfy his obligation with a conclusory statement, but must base the "denial of benefits on adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger*, 516 F.3d at 544. In the instant action, the ALJ's conclusory statement that Accurso's impairments did not "manifest clinical signs and findings that meet the specific criteria" was not sufficient. We note that in Defendant's motion for summary judgment, Defendant has provided an extensive explanation of why Defendant believes that the record supports the ALJ's determination. However, the requisite analysis of the record is absent from the ALJ's decision. Therefore, we remand this action to the ALJ to review the evidence and address in requisite detail the issue of whether Accurso's impairments, including his obesity, meet or exceed a listed impairment.

## II. Consideration of Obesity at Step Five

Accurso argues that the ALJ erred by failing to consider Accurso's obesity when assessing Accurso's limitations. Pursuant to SSR 02-1p, an ALJ should consider a claimant's obesity when determining whether an "individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy" and an ALJ should explain his "conclusions on whether obesity caused any physical or mental limitations." SSR

02-1p. The SSA has indicated that obesity may cause various functional limitations, including

> limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling; . . . [limitations in] postural functions, such as climbing, balance, stooping, and crouching; . . . [limitations on] [t]he ability to manipulate [objects]; . . . [and limitations on] [t]he ability to tolerate extreme heat, humidity, or hazards.

SSR 02-1p. The SSA has also indicated that the "combined effects of obesity with other impairments may be greater than might be expected without obesity" and that "someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." SSR 02-1p. In addition, the SSA has indicated that obesity causes sleep apnea in some individuals, which may "lead to drowsiness and lack of mental clarity during the day" and "may affect the individual's physical and mental ability to sustain work activity." SSR 02-1p.

  The medical record indicates that Accurso has consistently suffered from sleep apnea since at least May of 2004. (AR 19, 203, 210, 261). In addition, as discussed above, Dr. Weiss, an examining physician for the Bureau of Disability Determination Services, noted that Accurso had difficulty sitting up, getting on and off the exam table, and walking across a ten-foot room as a result of his obesity. (AR 258). Further, one of Accurso's treating physician, Dr. Hayek, identified that Accurso's knee pain was "clearly related" to his weight. (AR 203). Based on the above, the ALJ should have explained his reasons for adopting, "until May 1, 2009, but not

thereafter," the opinion in the RFC assessment prepared on March 12, 2008 by Dr. Madala, a non-examining physician, who found that Accurso could perform sedentary and light work as of March 12, 2008. *See* SSR 96-2p (indicating that controlling weight may only be given to opinions from treating physicians); *see also* SSR 96-6p (indicating that an ALJ must consider and address in his decision "RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists . . . as medical opinions from nonexamining sources" and evaluate the RFC assessment "considering all of the factors set out in the regulations for considering opinion evidence"). Therefore, we remand this action to the ALJ to review the evidence and address in requisite detail Accurso's limitations at step five in light of his obesity.

III. Negative Credibility Determination

Accurso argues that, in making his negative credibility determination, the ALJ failed to comply with SSR 96-7p. Pursuant to SSR 96-7p, when making a credibility determination, an ALJ must "consider the entire case record." SSR 96-7; *see also Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006)(stating that, in assessing credibility, "[a]n ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, 'functional limitations,' and treatment (including medication)"). Generally, a court gives "substantial deference" to an ALJ's credibility finding. *Caradine v. Barnhart*, 360 F.3d 751, 758 (7th Cir. 2004). However, "a credibility

12

determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Prochaska*, 454 F.3d at 738 (citations omitted).

In making his credibility determination, the ALJ found that Accurso's statements "concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible prior to May 1, 2009, to the extent they [were] inconsistent with the [RFC] assessment." (AR 44). In support of his finding, the ALJ listed some of the medical evidence presented by two of Accurso's treating physicians and by Dr. Weiss. However, the ALJ did not explain how such evidence supported his finding that Accurso's testimony was not entirely credible, so as to "'build an accurate and logical bridge from the evidence to the conclusion.'" *Berger*, 516 F.3d at 544 (quoting *Clifford*, 227 F.3d at 872). Therefore, we remand this action to the ALJ to review the evidence and address in requisite detail the issue of Accurso's credibility.


IV. RFC Assessment

Accurso argues that, in finding that he had the RFC to perform the full range of sedentary work prior to May 1, 2009, the ALJ failed to comply with SSR 96-8. SSR 96-8 provides that an ALJ's RFC assessment "must be based on *all* of the relevant evidence in the case record, " which includes "[m]edical history, [m]edical signs and laboratory findings, [t]he effects of treatment . . . , [r]eports of daily activities, . . . [r]ecorded observations, [m]edical source statements, [and] effects of symptoms, including pain, that are reasonably attributed to a medically determinable

13

impairment. . . ." SSR 96-8p (emphasis in original).

The record contains evidence indicating that, prior to May 1, 2009, Accurso may have been disabled, including evidence suggesting that prior to May 1, 2009, Accurso was morbidly obese and suffered from diabetes, sleep apnea, and chronic knee pain. (AR 199-200, 202-03, 205-07, 209-10, 212-13, 251, 257). In making his RFC assessment, the ALJ did not address why such conditions would allow Accurso to do the full range of sedentary work prior to May 1, 2009, but not after that date. Moreover, in making his RFC assessment, the ALJ did not discuss how the medical evidence established that Accurso's condition had worsened, such that Accurso would be able to do the full range of sedentary work prior to May 1, 2009, but not thereafter. Therefore, we remand this action to the ALJ to review the evidence and address the RFC assessment in requisite detail.

V.  Determination of Onset Date

Accurso argues that the ALJ violated SSR 83-20 when he determined that the onset date of Accurso's disability was May 1, 2009, as opposed to February 1, 2006. SSR 83-20 provides that "the determination of onset involves consideration of the applicant's allegations, work history, if any, and the medical and other evidence concerning impairment severity." SSR 83-20; *see also Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)(stating that "[w]here . . . a claimant is found disabled but it is necessary to decide whether the disability arose at an earlier date, the ALJ is required to apply the analytical framework outlined in SSR 83-20 to determine the

onset date of disability"). Where the alleged onset date is consistent with the medical and other evidence, an ALJ is required under SR 83-20 to adopt the alleged onset date. *Lichter v. Bowen*, 814 F.2d 430, 435 (7th Cir. 1987). In this case, Accurso's alleged onset date is February 1, 2006, which is the same date that Accurso allegedly stopped working due to knee problems. (AR 133). Further, significant medical evidence exists indicating that, even prior to February 2006, Accurso was morbidly obese and suffered from knee pain and sleep apnea. (AR 205, 210, 212). Thus, pursuant to SR 83-20 and Seventh Circuit precedent, as indicated above, the ALJ either should have adopted the alleged onset date or discussed in detail how the evidence contradicted the alleged onset date. Instead, even after finding that Accurso was disabled, the ALJ made a conclusory finding that the onset date of Accurso's disability was "May 1, 2009, consistent with the worsening in [Accurso's condition]" without discussing how the evidence supported such an onset date. Therefore, we remand this action to the ALJ to review the evidence and address the issue of the onset date of Accurso's disability in requisite detail.

## CONCLUSION

Based on the foregoing analysis, we deny Defendant's motion for summary judgment, grant Accurso's motion for summary judgment, and remand the instant action for further proceedings consistent with this opinion.

                                                _____
                                                Samuel Der-Yeghiayan
                                                United States District Court Judge

Dated: February 9, 2011